BAKER, JUDGE;
All of the claimants are residents and property owners in Dingess, Mingo County, who live on the Big Sang Kill Creek, a branch of Twelve Pole Creek. Their claims have been consolidated in accordance with Rule 12 (a) of the Rules of Civile Procedure. Claimants seek awards for property damage sustained when a flood occurred on June 15, 1989.
The claimants allege that the respondent was negligent in replacing a bridge located over Big Sang Kill creek and abutting W.Va. Route 3/5, otherwise known as Dingess Road, with a culvert which was inadequate to carry the flow of water; thereby causing the creek to overflow onto their property during a storm on June 15, 1989.
The respondent admits that the bridge was replaced with a seventy-two inch culvert a few months prior to June 15, 1989. This was done at the request of a nearby property owner. Apparently, the existing bridge has begun to deteriorate and emergency vehicles were unable to cross the bridge. There is evidence in the record that several of the residents of Dingess informed the respondent during the installation of the culvert that it would not be sufficient to carry the flow of water from the creek. However, the residents were informed by the respondent’s crew that there were orders to install the new culvert. The respondent denies the aggregation that it knowingly installed a culvert insufficient to accommodate the flow of water and contends that the *126 area flooding due to an excessive amount of rainfall.
The evidence at the hearing of this claim on February 24, 1993, established that it began to rain at approximately 11:00 a.m. on June 15, 1989, and by approximately 2:00 p.m. the water in Big Sang Kill Creek began to rise. The creek crested at approximately 4:30 or 5:00 p.m. and most of the damage to claimants’ properties occurred at that time. Later that evening, the water from the Big Sang Kill Creek began to lower and the water from the Twelve Pole Creek began to rise. It crested at approximately 9:00 p.m.
Witnesses stated that the opening at the mouth of the Big Sang Kill Creek was larger when the bridge was in existence. Later, when the culvert was installed by the respondent, dirt and gravel were filled in around the culvert to hold it in place, thereby creating a smaller area of flow for the water. As the water rose in the Big Sang Kill Creek , it was unable to pass through the culvert fast enough to avoid backing up. Finally, the water began to flow over the top of the culvert creating a waterfall effect on the downstream side of the culvert. Witnesses stated that there was no debris caught in the culvert. The culvert opening simply was not large enough to accommodate the flow of water.
Tahir Qureshi, a design engineer for respondent, testified that the reason for the flood was the fact that Twelve Pole Creek rose to a level that was high enough to back up the water in Big Sang Kill Creek. The size of the culvert did not cause the flood. This testimony appears to be inconsistent with the evidence that Twelve Pole Creek did not begin to rise until the Big Sang Kill Creek had already flooded. Also, Mr. Qureshi stated on cross examination that the culvert was not designed to take all the water from Big Sang Kill Creek and that when the seventy-two inch pipe was installed it choked down the size of the channel considerably.
Norma and Lon Ooten both testified that they live in a mobile home which is located near the mouth of the Big Sang Kill Branch and Twelve Pole Creek and is approximately seventy-five feet from the culvert. They have lived at this location since 1996. Prior to June 15, 1989, their property had never experienced flooding. On June 15, 1989, the flood waters came within one inch of entering their mobile home. As a result of the water, their property sustained substantial damage. The damage sustained includes, but is not limited to the following: the duct-work of the forced-air heating system was damaged by water and sediment; the insulation under the floor was damaged; the block foundation settled in certain places, causing cracks in the blocks; the mobile home settled unevenly after the flood; the interior trim is misaligned due to uneven settling; the carpets must be replaced due to uneven flooring caused by the flood; and the kitchen ceiling is leaking due to the defects in the foundation.
The Ootens also suffered aggravation from the flooding. They were forced to go without water for ten days due to damage to their water well. They spent a least six hours a day for twenty-one days to clean up their property. Also, Mrs. Ooten experienced psychiatric complications due to the stress of the situation and was a patient in St. Mary’s Hospital for twenty-six days. The Ootens received $1,500.00 from an insurance policy for the damage sustained to their water system; however, they received no other benefits for the remainder of the damages or for inconvenience and aggravation.
Charles and Crystal Meade testified that they live in a mobile home near the mouth of the Big Sang Kill Creek and Twelve Pole Creek. The water reached a level even with the floor of their mobile home and caused substantial damage. The damage sustained includes, but is not limited to the following: the particle board flooring was damaged; floor coverings were damaged; the duct-work of the forced-air heating system was damaged by water and sediment; insulation under the floor was damaged; foundation piers settled and the mobile home became tilted and *127 uneven; the rear porch became unattached to the roof, causing it to leak; the floor unit and other materials for a storage building under construction were washed away; and the wells filled with mud. They also suffered physical complications due to the unsanitary conditions. They did not have any insurance coverage for the property damages which their property sustained.
Arthur and Charlotte Meade testified that they also live in a mobile home near the mouth of the Big Sang Kill Creek and Twelve Pole Creek and that they have lived there since 1969. Arthur stated that in 1977 the water entered his yard, but did not enter his mobile home. He also stated that in 1977 the rainfall was much heavier than the rainfall in June of 1989. On June 15, 1989, the water was 10 to 12 inches deep inside their mobile home and caused substantial damage. The damage sustained includes, but is not limited to the following: the particle board flooring was damaged; the floor coverings were damaged; the duct-work of the forced-air heating system were damaged by water and sediment; the insulation under the floor was damaged; the metal skirting was damaged in several places; and the lower part of the interior paneling was damaged. They also lost most of their furniture and had an inch of mud throughout the mobile home. They received $5,000.00 for the damages to their mobile home and its contents from an insurance policy. However, they have not been reimbursed for their excess damages, inconvenience or aggravation.
The Court finds, after reviewing the record, that the claimants have established negligence on the part of the respondent by a preponderance of the evidence. The Court is of the opinion that the culvert which was installed acted as a dam which disrupted the normal flow of the water from Big Sang Kill Creek into Twelve Pole Creek, thus causing the flooding on claimants’ properties. The Court requested documentation from the claimants as to insurance coverage available to them for their damages. This documentation has not been forthcoming. As the amount of damages for claimants Meade has not been established, the Court will render a decision as to liability only. Awards may be granted at a later date when proper documentation has been filed with the Court.
SETTLEMENT ORDER
On this day came the claimants, Charles Meade, Crystal Meade, Arthur Meade, Charlotte Meade, Norma Ooten and Lon Ooten, by counsel, John R. Mitchell, and the respondent, West Virginia Department of Transportation, Division of Highways, by counsel Andrew F. Tarr, and announced to the Clerk of the Court of Claims that both all parties have agreed to a settlement of the damages portion of each of the above-referenced claims. Specifically, respondent agrees to pay the following damages amounts to the claimants:
1. In the claim involving Charles Meade and Crystal Meade (Claim No. CC-91-170), respondent agrees to pay the total sum of $4,500.00 to the claimants in said claim. The parties represent that the sum of $4,500.00 paid by respondent in Claim No. CC-91-170 acts as a full and complete settlement, compromise and resolution of all matters in controversy in said claim and as full and complete satisfaction of any and all past and future claims claimants may have against respondent arising from matters described in said claim.
2. In the claim involving Arthur Meade and Charlotte Meade (Claim No. CC-91-171), respondent agrees to pay the total sum of $2,000.00 to the claimant in said claim. The parties represent that the sum of $2,000.00 paid by respondent in Claim No. CC-91-171 acts as a full and complete settlement, compromise and resolution of all matters in controversy in said claim and as full and complete satisfaction of any and all past and future claims claimants may have against respondent arising from matters described in said claim.
3. In the claim involving Norma Ooten and Lon Ooten (Claim No. CC-91-172), *128 respondent agrees to pay the total sum of $8,000.00 to the claimant in said claim. The parties represent that the sum of $8,000.00 paid by respondent in Claim No. CC-91-172 acts as a full and complete settlement, compromise and resolution of all matters in controversy in said claim and as full and complete satisfaction of any and all past and future claims claimants may have against respondent arising from matters described in said claim.
WHEREFORE, in accordance with the preceding agreements, this Court AWARDS $4,500.00 to the claimants in claim No. CC-91-170; $2,000.00 to the claimants in claim No. CC-91-171; and $8,000.00 to the claimants in claim No. CC-91-172.